MARKET HOLDING COMPANY, a body corporate, BYRON M. SEABROOK, ALBERT E. SCHEFLEN, JOSEPH H. CARR, FLOYD H. BRADLEY and JOHN S. OWENS, complainants-appellants,

*v.*

NORTH CAMDEN TRUST COMPANY, a banking corporation, and REUBEN H. BENNER, defendants-respondents.

[Argued October 28th, 1937.    Decided February 10th, 1938.]

*Mr. Joseph Beck Tyler,* for the appellants.

*Messrs. Kenworthy & Clark (Helen Moran Warren,* of counsel), for the respondent North Camden Trust Company.

The opinion of the court was delivered by

HEHER, J.

The object of the bill of complaint is to restrain the defendant trust company from the prosecution of an action at law against complainants upon a promissory note for $3,800, made by complainant Market Holding Company to its own order, under date of April 16th, 1935, payable three months thereafter, and endorsed by it and its co-complainants, Seabrook, Scheflen, Carr, Owens and Bradley, in that order, and again by the maker, who negotiated it to the trust company in renewal of a note of the same maker and endorsers. The individual endorsers were stockholders of the corporate maker. The original loan was $13,000; and there was no collateral

security at the outset. On November 26th, 1934, Carr, a lawyer, executed and delivered to Scheflen, Bradley and Seabrook an assignment of "fifty per cent. of whatever sums of money may be due me for [legal] services rendered to" the trust company "in connection with" four enumerated matters.

On July 16th, 1935, Carr transmitted to the trust company, through Seabrook, a statement of his fees for services rendered. The letter of transmittal advised it that the balance due for the services so furnished was $6,456.14, and that "the charges for services rendered in the matters covered by" the assignment adverted to "amount to $5,050," and formally requested the recognition of the assignment, to the end that "fifty per cent. of the amount of the charges for services in the matters covered by the assignment" be applied to the note in suit. Seabrook thereupon tendered to the trust company $1,275, the balance due upon the note in suit on the assumption that the assignment warranted the deduction from the face amount thereof of one-half of Carr's charges for services so claimed to have been rendered.

At the time of the making of the assignment, and also when the note in question matured, Carr was indebted to the trust company, on separate and independent obligations in nowise involving complainants, in the total sum of $27,000; and on July 25th, 1935, the treasurer of the trust company informed Carr, by letter, that the company's board of directors had deliberated upon the matter and had directed him to say that it did not "consider the services rendered" justified the charges so made, and that, at all events, "any amounts which might have been due you are offset by amounts which you owe us."

The bill also prayed that the amount due on the assignment for the services thus furnished by Carr be determined, and that the sum so arrived at be credited on the promissory note in the action at law.

On May 9th, 1935, Carr assigned to defendant Benner, all moneys due from the trust company for fees for "personal and legal services," expenses, disbursements, and so forth, subject to the assignment to Scheflen, Bradley and Seabrook.

The learned vice-chancellor ruled that the liability of the five endorsers of the note in question, so far as the trust company is concerned, "is a joint and several liability," and that, under the rule laid down in *Brewer* v. *Norcross, 17 N. J. Eq. 219,* "joint and separate debts, or debts accruing in different rights, cannot be set off against each other," subject to the qualification that in equity special circumstances give rise to exceptions, and therefore Carr's endeavor "to transfer to three of his joint co-endorsers a part of his unliquidated claim for services" was nugatory. He held that, in the circumstances, it would be "inequitable to permit this money, or such part of it as is determined to be proper as compensation for services rendered," to be credited on the note. Complainants appeal; and their claim of error necessarily rests upon the asserted applicancy of the doctrine that, as the debtor, it was Carr's right to direct the application of the credit to this particular debt.

We do not think so. Fairly interpreted, the evidence relating to the agreement between the trust company and Carr is indicative of a common intention to credit Carr's earnings upon his primary obligations to the bank. Undoubtedly, the bank was principally interested in securing a reduction of the principal of the promissory notes made by him. These obligations were unsecured, and Carr was insolvent; and it is inconceivable that the bank would, under such circumstances, grant to him the privilege of applying the moneys so earned to the liquidation of the relatively small endorsement-secured obligation upon which he was but one of five secondarily liable, while his unsecured primary obligations remained unsatisfied. Carr's testimony negatives the existence of such an understanding. The contrary is implicit in the words chosen by him to express the understanding as he conceived it.

Thus it is that this equitable assignment to Carr's co-endorsers of a non-negotiable chose in action was subject to the bank's absolute right to apply the credit so arising to the satisfaction *pro tanto* of Carr's primary obligations to it. *Kamena* v. *Huelbig, 23 N. J. Eq. 78; Woodruff* v. *Morris-*

*town Institution for Savings, 34 N. J. Eq. 174; Jenkinson v. New York Finance Co., 79 N. J. Eq. 247; Titus v. Hoagland, 39 N. J. Eq. 294; Pom. Eq. Jur. (4th ed.) §§ 703-706, 1279.*

A partial assignment of a chose in action, not assented to by the debtor, was given no recognition at common law; and it is the generally accepted rule that the jurisdiction of equity to enforce such an assignment, not accepted by the debtor, will not be exercised whenever it would be inequitable to effectuate it or where its enforcement would be to the substantial prejudice of the debtor. *4 Am. Jur. 281.* See, also, *Pom. Eq. Jur.* §§ *168, 1403, 1404.* Enforcement rests in the sound discretion of the chancellor, exercised in the light of the circumstances of the particular case. Here, complainant assignees parted with no consideration for their assignment; they are mere volunteers, and therefore stand in the shoes of their assignor. And, in the special circumstances, considerations of justice and equity render their title subject to the application of the fund to the satisfaction of Carr's primary obligation to the bank.

The decree is accordingly affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, HEHER, PERSKIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 10.

*For reversal*—None.